Thomson, J.
*43 This suit was brought by the appellee to recover damages for a breach, by the appellant of the the following contract:
“Moab, Utah, 4-3, ’97..
‘ ‘ Tom Farrer, by Amasa Larsen, his agent, has this day sold to G. M. Caster all his herd of cattle now being kept by Amasa and Thos. Larsen, allowing to the purchaser a cut of one-half of the yearling-heifers and another cut of 15 from the remainder. The entire herd consists of about 200 head of cattle branded 21- — . The cattle, are all native Utah cattle, and before making- any cut the purchaser may reject any cripple, sick, deformed or lump-jawed cattle. The price to be paid for the cattle is $15 per head for all that are 12 months old or more at the time of delivery. Those under 12 months old at that time shall go with the calves and not be counted. The seller agrees to deliver the cattle in good condition at Thompson Springs, Utah, at any time between the 20th and 25th day of September, 1897. Received $400 in advance, the balance to be paid when the cattle are delivered.
“Amasa Larsen, Agt.
“G. M. Caster.
“It is understood that all calves of the cows belonging in the cattle sold by Tom Farrer to G. M. Caster shall go with the cows.
“Amasa Larsen.”
The complaint set forth the contract, and alleged that at the time of its execution Amasa Larsen was the agent of the defendant, with authority to execute it for him; that the defendant refused to deliver the cattle as required by his agreement, and that the plaintiff was otherwise damaged. The answer denied the execution of the contract, and averred that one Mathias Hartman, and not the defendant, was the owner of the cattle; that the cattle were in Lar *44 sen’s possession under a lease from Hartman; that Larsen was not the defendant’s agent, and had no authority to act for him; that at the time the contract was made, the plaintiff knew that Larsen was not the defendant’s agent, and knew that Hartman was the owner of the cattle, and that the defendant sent the $400, which he admitted he received from the plaintiff, to Hartman.
About the 20th day of May, 1897, the plaintiff received from Larsen seven cattle belonging to the herd he had purchased, and paid for them by a check for $105, payable to the order of the defendant. In June following, he received two more cattle from the same herd, and paid for them by a check for $30, payable to the order of the defendant. The cashier of the Wells, Fargo & Co. bank, at Salt Lake City, Utah, testified that the defendant was a regular depositor in that bank, and had an account there during April, May and June, 1897, and that he deposited the check for $400, and the one for $105 to his own credit in that bank. The check for $30 appears, from the endorsement upon it, to have been deposited in the same bank. The defendant testified that he placed the proceeds of the $400 check to the credit of Hartman, but the books of the bank contradicted him. Beyond admitting that he received the other two cheeks, he said nothing about them. Some correspondence between the plaintiff and the defendant, relating to the cattle, was in evidence. It consisted of a letter from Farrer to Caster, dated October 1, 1897; an answer by Caster to that letter; a further letter from Farrer to- Caster, dated September 24, 1897, and Caster’s reply, dated the next day. The implied assumption of this entire correspondence is that the contract was the contract of the defendant, and not that of some one else. The introduction of the correspondence was resisted on the ground, applied to *45 the whole, that the letters contained propositions looking to a compromise; and on the ground, applied to the last letter of the plaintiff, that it was merely a declaration of the plaintiff himself, and therefore not binding upon the defendant. We find nothing in the letters resembling an offer of compromise. As to the original contract, and the obligations of the parties under it, the letters contained nothing to indicate that there was any dispute or difference of opinion between the parties. The correspondence related to the place of delivery of the cattle, — Farrer proposing Seven Mile, instead of Thompson Springs, the place named in the contract, — and some minor matters in relation to delivery and settlement for cattle not delivered. So far as the contract itself and the rights of the parties under it were concerned, the letters showed no disagreement nor anything which could be the subject of compromise. They were offered merely to show the recognized relations existing between the parties at the time they were written, and they are couched in language too vague and indefinite to be evidence of anything else without further explanation. For the purpose for which they were offered they were properly admitted. The last letter of the plaintiff was admissible as part of the correspondence. A correspondence, like a conversation, consists of what both parties said in relation to the subject-matter. It is an entirety, and can be best understood by knowing it all.
The plaintiff testified that to facilitate the delivery of the cattle, he laid out money for pasture on which to put them as they were gathered, and employed men to assist in searching the range for them. He also stated that he incurred the expense of pasture and men — giving the amount — by agreement with Mr. Larsen, to whom he had been referred in the matter by the defendant; and that after he had *46 bought the pasture and started the men out upon the range, the defendant and Mr. Larsen refused to abide by the agreement. The defendant objected to the evidence of the agreement and the expense, for the reason that no special damages were pleaded. The complaint set forth, in a general way, the expense and loss to which the plaintiff testified. We think a motion to make the allegation more specific would have been sustained. But there was no such motion. The averment as it stood, was sufficient to let in the proof; and the testimony, being relevant and material, was properly admitted.
We do not think the defendant made his denial of Mr. Larsen’s agency good. We do not see how he can escape from the facts. He received a copy of the contract, in which Larsen assumed to act as his agent, immediately after it was made. At the same time he received a check drawn by the plaintiff, and payable to his own order, for $400. This check was acknowledged in the contract as an advance payment upon the purchase price of the cattle, which, by the terms of the instrument, he sold to the plaintiff. He did not disavow the agency or return the check. On the contrary, he kept the check, and deposited it in the bank to his own credit. He does not even now propose to return the money. His retention of the money, with full knowledge of the facts, is conclusive upon him that in making the contract, Larsen acted as his agent. But this is not all. Afterwards, for a few head of the cattle described in the contract which were delivered to the plaintiff, he received another check, payable to his order. He did not explain to the plaintiff that, not being the owner of the cattle, he was not entitled to the check. He pursued exactly the opposite course; he endorsed the check, and sent it to the bank, to swell his personal account. Evidently it had not occurred to him that Larsen *47 was not his agent. The plaintiff testified that the defendant never disclaimed ownership of the cattle until about the 23d day of September, 1897, and that he did so then only upon threat by the plaintiff to sue him if he did not perform his contract. The testimony of the plaintiff must be accepted by us as true, because the jury believed him. Outside of the estoppel by which the plantiff is bound, the circumstances of the case, as'they are discloved by the evidence, strongly indicate that Larsen was, in fact, the agent of the defendant, with full authority to make the sale, and that the long delayed denial of the agency was a subterfuge. The verdict of the jury in the plaintiff’s favor for $854, was amply warranted by the evidence; and, in view of the facts, we think the amount quite modest.
There are forty assignments of error each of which refers us to' some page of the bill of exceptions. We have not looked outside of the abstract which the defendant has furnished us. That is presumed to contain everything regarded by him as of importance to himself. We have carefully read this abstract, and have discovered no error committed at the trial. The instructions reflect our views of the law. On the question raised by the answer and the evidence concerning Hartman’s ownership of the cattle, the instruction was, we think, too favorable to the defendant. By his agent, the defendant sold the cattle to the plaintiff. He sold them as belonging to himself, and took and kept money that was paid for them; and he can not evade liability on his contract by disclaiming their ownership.
There seems to have been an unsuccessful motion by the defendant to retax certain of the costs. We find no error assigned upon the ruling, and we *48 find nothing in the abstract to enable us to say that it was incorrect.
The judgment will be affirmed. Affirmed,