[No. 3668.]

## McKay v. Fleming.

1. CONTRACT—*Rescission by New Contract.* The execution and acceptance of a contract which renders impossible the performance of a former contract, is, presumptively, a substitution for and rescission thereof. This is the general rule even in the absence of full performance of the second contract. If the second contract is fully performed, the presumption becomes conclusive.

2. DAMAGES—*Release of.* And the latter contract waives damages for the non-performance of the former if there be no express agreement, at the time, to the contrary. Mere silence is not sufficient.

3. DURESS—*What is Not.* Defendant agreed to convey lands to plaintiff. In fact, he owned but an undivided half of the land, and plaintiff, in order to acquire the property, paid to defendant's co-tenant a price largely in excess of that stipulated to be paid to defendant. Plaintiff afterwards brought an action against defendant for this excess, claiming that by reason of defendant's failure he was compelled to pay the

excess in order to obtain the property to which he was entitled. This contention was repelled, the court holding that plaintiff, being at full liberty to stand upon his rights under the original contract, was under no compulsion.

4. PRINCIPAL AND AGENT—*Ratification.* One who accepts and acts upon a contract made for his behalf, by an agent, vacating a previous contract, will not be heard to afterwards traverse the agent's authority, as the foundation of an action for the non-performance of the contract so vacated.

*Appeal from Denver District Court.* HON. CARLTON M. BLISS, Judge.

Messrs. ORAHOOD & HURLBUT, and Mr. HORACE N. HAWKINS, for the appellant.

Mr. F. T. JOHNSON and Mr. W. W. DALE, for the appellee.

MORGAN, J.

This is an appeal by the defendant from a judgment on a verdict in the Denver district court against him for $1,450, in an action upon an alleged breach of contract for the sale of real estate. The plaintiff, through an agent, obtained a written contract from the defendant, whereby $50 was acknowledged as paid in cash, and the property was to be conveyed on payment of the balance of the purchase price, on or before a given date, and if not so paid the contract to be void and the $50 forfeited as liquidated damages. It was provided that the balance was to be paid partly in cash and partly by notes, with mortgage upon the property. Later, and before the time expired to pay the balance and give the notes, the plaintiff, through his agent, received a letter from the defendant, stating that he could not convey the property, as he owned only an undivided one-half interest therein, and his co-owner would not convey the property for the price agreed upon. Neither the plaintiff nor his agent knew, prior to the receipt of this letter, that defendant owned

only an undivided one-half interest in the property, and the contract provided that the defendant should convey the entire property. After obtaining the information, by the letter aforesaid, plaintiff sent the agent to see the defendant and his co-owner, and to make some arrangement for the purchase of the undivided one-half interest not owned by the defendant. The agent thereupon made a written agreement with the defendant's co-owner, similar to the one made with the defendant, whereby plaintiff agreed to pay $1,450 more for the co-owner's half interest than was contemplated by the first contract. At the same time, the agent made another written agreement with the defendant, himself, quite similar to the first agreement with him, naming $50 as part payment on the purchase price, the same as in the first contract. The second contract with the defendant differed from the first in the following particulars: an undivided half interest, only, was contracted for, the price being proportionately the same, one-half of the amount named in the first contract; a different date was set for the payment and conveyance, which was one day before the date set in the first agreement; all of the money was made payable in cash; a slight change was made as to the assessment tax to be paid by the seller, and a day certain was set and a place agreed upon to complete the sale; the word "option" was used once or twice in the second agreement, and not used in the first. Afterwards, and before the time expired for the consummation of the first contract, the sale was completed at the time and place and according to the terms and provisions of the two later contracts. Within a few days thereafter plaintiff demanded of defendant the money herein sued for, and, on defendant's refusal to pay it, this action was begun.

The plaintiff, by making the second contract of purchase with the defendant, lost all right to rely upon the first contract, either to enforce it as a contract of sale or

to rely upon it in a suit for damages for a breach thereof. After the second contract was made, the defendant was put in a position so that he could not comply with the first contract without violating the second, and the sale was closed under the second before the time expired within which the defendant could comply with the first. The plaintiff's agent suggested and wrote the second contract, in which defendant acquiesced. The plaintiff says he was compelled to make the second contracts in order to overcome defendant's inability and refusal to comply with the first, and in order to make certain the purchase of the entire property; but if plaintiff elected to sacrifice his rights under the first contract, in order to make certain his purchase of the property, he ought not thereafter to complain. He was not compelled to do this, except in the sense that he was compelled to choose this horn of the dilemma. This was not duress under the law, nor would it enable plaintiff to avoid the effect of the second contract.—*Simmons v. Sweeney,* 109 Pac., 265, 13 Cal. App., 283; 9 Cyc., 448. When plaintiff found the defendant unable, and thereby unwilling, to perform the first contract, he could have rested upon his rights under the first contract, and could have brought suit (Pomeroy on Specific Performance, secs. 173 and 434) for the specific performance thereof, demanding that defendant convey his half interest, and abatement or compensation for the failure to convey the other half, or, for damages for its breach; or he could have done what he did; but he could not do what he did and still rely upon his right to a suit for damages under the first contract. A party cannot avail himself of the non-performance of a contract if his own act has prevented performance. His act estops him.—*Young v. Hunter,* 2 Seld., 207; *Richardson v. Cooper,* 25 Me., 450; Broom's Legal Maxims, 279, 282; *Rude v. Levy,* 43 Colo., 482, 490, 96 Pac., 560, 24 L. R. A. (N. S.), 91, 127 Am. St., 123. The second contract was not a renewal of the first,

but a substitution, whereby the first was discharged. The $50 expressed in the second contract as a consideration and part payment on the purchase price, the testimony shows, was the same $50 which was paid on the first contract. This was equivalent to a return of the consideration of the first contract and a repayment thereof on the second. The second contract very materially changed the first as to the time within which it was to be performed and the interest to be conveyed. The first contract could not possibly remain in existence as a valid contract between the parties after the second was entered into, and, as said in *Paul v. Meservey,* 58 Me., 419, 421:

"When a new contract is inconsistent with, and renders the performance of a former one between the same parties impossible, the former is rescinded, upon the same principle that a subsequent act of the legislature repeals a former act, when the two are inconsistent."

A waiver of performance under the first contract arose, and, as the second contract was literally performed, this would include a waiver of any suit for damages for non-performance thereof, unless it was specifically agreed, at the time, that such subsequent contract should not be so considered.—2 Parsons on Contracts, pp. 837, 838 and 839 (9th ed.). The learned author there says:

"Another sufficient defense is accord and satisfaction; which is substantially another agreement between the parties in satisfaction of the former one; and also an execution of the latter agreement. This is the meaning of the ancient rule, that accord without satisfaction is no bar to an action; and it used to be laid down in the earlier books with great exactness, that the execution of the accord must be complete and perfect. So, indeed, it must be now, except where the new promise itself is, by the accord or agreement, the satisfaction for the debt or broken contract. The party holding the claim may agree to take a new promise of the other in satisfaction of it;

or he may agree to receive a new undertaking when the same shall be executed, as a satisfaction. In either case he will be held to his bargain, and only to that. Whether the new promise (*p. 682) shall have by itself the effect of satisfying the original claim, must be determined by the construction of the new agreement (*p. 683). Generally, but not universally, if the new promise be founded upon a new consideration, and is clearly binding on the original promisor, this is a satisfaction of the former claim; and otherwise it is no satisfaction. But even a promise, which would not itself be a satisfaction, may, if it be fully performed, at the right time and in the right way (and not merely tendered) become then a satisfaction."

*Beshoar v. Robards*, 8 Colo. App., 173, 45 Pac., 280; *Munford v. Wilson*, 15 Mo., 372; *S. & H. Howard v. Wilmington & Susquehanna R. Co.*, 1 Gill (Md.), 311. In the latter case the court said:

"The legal presumption of a merger, as where two contracts are successively entered into upon the same subject matter, is not to be repelled by evidence of the silence of one party, but assent of parties must be averred and proved, to prevent such presumption from operating."

Plaintiff seeks to avoid this situation by the claim that his agent exceeded his authority in making the second contract with the defendant, claiming that he only authorized the agent to purchase the co-owner's interest, and did not authorize him to make any other or further contract with the defendant. This claim is overthrown by the testimony of the agent that he had no instructions to sign the second contract "any further than to get the property, and that was the only way I saw for it," and by plaintiff's testimony that, after learning from his agent that he had made this second contract, and after the agent turned the second contract over to him, he accepted it, and afterwards acted under it and permitted

the full performance thereof according to its terms, by the sale and conveyance of the property as specified therein; *Farrer v. Caster,* 17 Colo. App., 41, 67 Pac., 171; and by his further testimony that he authorized his agent to make the best bargain he could and to pay the price and close the deal; that the result of his agent's trip to see the two owners was that he had to pay one of them $8,000 for his half and the other $6,550 for his half, and that the property was thereafter received in pursuance of that understanding, and the money was paid on June 14th, which was the date set in the second contract made with the defendant.

As no motion was made by defendant for non-suit, and none for a directed verdict, the error of the lower court consists in the giving of erroneous instructions, and in refusing instructions tendered.

The divergent views of the court and counsel for the defendant may be fully illustrated by one of the instructions given by the court and one of the instructions offered by the defendant, but refused by the court.

The defendant asked the court to give the following, among other instructions, covering his view of the case:

"If the jury find from the evidence in this case that the plaintiff, acting by John S. Settle, Jr., as his agent, made the contract of June 11th, 1909, with the defendant D. J. McKay for the purchase of one-half of the property described in the complaint for $6,550, being one-half the amount mentioned in the first contract, and made another contract with William D. McKay for the other one-half of the property for $8,000, and these contracts were made and entered into before the expiration of the time provided for payment under the first contract, and that the second contracts provided different terms of payment and different times therefor, and that afterwards the amounts provided for by the second contracts were paid and at the time provided for, then you should find that the sale

was made under the second contracts and not under the first contract.

"If the jury so find, then they should further find that the second contracts superseded the first contract, and· that the plaintiff cannot recover in this action, and your verdict should be for the defendant."

The court gave the following instruction, over the defendant's objection, showing the court's view:

"The court instructs the jury that a subsequent contract will not operate to extinguish a former one between the same parties, unless it was *expressly* accepted by them for that purpose. The evidence must be clear and satisfactory that such was the intention of the parties. And, in this case, before the alleged contracts made on June 11, 1909, can be considered as a substitution or waiver of the terms and conditions of the ·contract of May 5, 1909, the jury must find from a preponderance of the evidence that it was *expressly agreed by and between the plaintiff or his duly authorized agent and the defendant that said second contracts should be substituted for or considered as a waiver of the terms and conditions of the said former contract.*"

The instruction given, especially the parts I have put in italics, discloses the view of the court that it must have been *expressly agreed* that the second contract was substituted for the first; the instruction, refused, the view of the defendant's counsel, that, the *mere acts* of the plaintiff in *making* the second contract and *carrying it out* constitute a substitution. Both are equivalent to· directing the jury, neither leaving anything for the jury to pass upon. The instruction given by the court was clearly erroneous, because adopting a view of the law in such cases that is not upheld by authority. The general rule is, even in the absence of full performance of the second contract, that the second will be presumed to be a substitution for the first, especially if founded upon a

new consideration, unless it clearly appears to the contrary. If the second is fully performed, the presumption becomes conclusive. The plaintiff testified that the second contracts made in this case were fully performed.

In 2 Parsons on Contracts, *supra,* the author says:

"But even a promise, which would not itself be a satisfaction, may, if it be fully performed, at the right time and in the right way (and not merely tendered) become then a satisfaction."

In *Howard v. Wilmington, Etc., R. Co., supra,* the court said:

"The legal presumption of a merger, as where two contracts are successively entered into upon the same subject matter, is not to be repelled by evidence of the silence of one party, but assent of parties must be averred and proved, to prevent such presumption from operating."

"A contract is the result of agreement, so an agreement may put an end to a contract. Therefore, a contract may be discharged at any time before the performance is due, by a new agreement with the effect of altering the terms of the original agreement or of rescinding it altogether; and a claim under the original contract may then be met by the new agreement, so far as the latter operates to alter or rescind the former."—9 Cyc., 593.

"One written contract complete in itself will be conclusively presumed to supersede another one made prior thereto in relation to the same subject-matter. If agreements be made between the same parties concerning the same matter, and the terms of the later are inconsistent with those of the former so that they cannot subsist together, the later will be construed to discharge the former. But where it is claimed that by reason of inconsistency between the terms of a new agreement and those of the old the old one is discharged, the fact that such was the intention of the parties must clearly appear. A

new contract with reference to the subject-matter of a former one does not supersede the former and destroy its obligations, except in so far as the new one is inconsistent therewith, when it is evident from an inspection of the contracts and from an examination of the circumstances that the parties did not intend the new contract to supersede the old, but intended it as supplementary thereto. Where a new contract is inconsistent with the continuance of the former one, and only provides a new mode of discharging the same, it has no effect unless or until it is performed."—9 Cyc., 595-6.

That the contrary of the rule expressed in the instruction given is the true rule more clearly appears from the last sentence in the following from an opinion by Breese, J., in the case of *Stow v. Russell,* 36 Ill., 29, where, in deciding whether a second contract for the sale of real estate was a revivor, renewal, extension of a former one, or a new one, he said:

"The plaintiff insists the August contract was not a new contract, but merely an extension of the contract of 1846. It may not be very material which it is; we are inclined to think, however, from the circumstances attending the transaction, and from the transaction itself, the old contract was thrown aside, and a new one made on a different basis.    *    *    *

"The price to be paid for the lot was greater under the new than under the old contract. It has, too, the most stringent stipulations, and it does not contain the slightest allusion or reference to any prior contract. There is not the least intimation in it that it was designed as a revival, or as an extension of the contract of 1846, for any purpose or for any new consideration. In all its aspects and features, it seems to be an entire new contract for a larger price, and with the stipulation that the covenants to be performed by the plaintiff are expressly made a condition precedent to any performance by Russell, and

time is made of the essence of the condition. If it had been intended to revive and extend the old contract, it is natural to suppose, some reference to it, or some intimation to that effect, would be found in the contract actually made.''

The same appears from the last sentence of the following quotation from *Rogers v. Rogers*, 139 Mass., 440, 1 N. E., 122, where it is said:

''Whether the new agreement was substituted for the old, and thus operated as a rescission or discharge of it, must be determined by the intention of the parties, to be ascertained from their correspondence and conduct.— *Peck v. Requa*, 13 Gray, 407; *Munroe v. Perkins*, 9 Pick., 298, 20 Am. Dec., 425; *Holmes v. Doane*, 9 Cush., 135; *Stearns v. Hall, Id.*, 31; *Cummings v. Arnold*, 3 Metc., 486, 37 Am. Dec., 155; *Cooke v. Murphy*, 70 Ill., 96; *Lawrence v. Davey*, 28 Vt., 264; *Stewart v. Keteltas*, 36 N. Y., 388; *Moore v. Locomotive Works*, 14 Mich., 266.

''If we assume that the original agreement was sufficiently definite to constitute a valid contract, the parties could clearly substitute for it a new contract, which should determine their rights and liabilities after the new contract was made, and this would operate as a waiver or discharge of the first contract as to future orders and deliveries, unless it appeared that the first contract had been broken by an absolute refusal on the part of the defendant to perform it, and that a new contract was not intended to be a discharge of the breach. As to the orders given before October 14th, which the defendant had refused to fill if the new contract by its terms covered those, we think the same rule holds. If the parties agreed that these orders should be filled at the prices stipulated for in the new contract, without considering whether the new contract would of itself be a discharge of these partial breaches, performance of the new agreement would operate as a discharge, or an accord and sat-

isfaction, unless it appeared that such was not the intention of the parties.''

It is very clear from the foregoing authorities that the court erred in giving to the jury the instruction aforesaid; in fact, the court would have been fully justified in directing the verdict for the defendant. The instruction offered by the defendant, although not in all respects pertinent, should have been given, in some form, as well as one or two other instructions offered, equivalent to a directed verdict. The defendant pleaded the second contracts, and the plaintiff testified they were fully performed; this destroyed any right of action on the first.

The parties intended by the making of the second contract to disregard and discharge the first, as shown by the testimony. The plaintiff, himself, testified that the property was sold and the money paid, the deed executed and delivered at the time and place, and under the terms of the second contract, prior to the date the first was to have been fulfilled, and it seems absurd that the plaintiff should now attempt to avoid the effect of this second agreement and the subsequent performance thereof, and bring suit upon a contract the full performance of which by the defendant he absolutely prevented by the making and the fulfillment of the second. The second contract was substituted for and discharged the first, and ''no action lies upon a contract which has been superseded by the substitution of a different contract.''—9 Cyc., 716.

It is unnecessary, therefore, to discuss the question of damages, or the measure thereof, in this action, or the point raised by the appellee, that the defendant's second defense did not constitute a good defense because it did not allege that Settle was acting as agent of the plaintiff in making the second contract. However, the defendant alleged in the first defense of his answer that—''plaintiff or some other person bought said property'' at the time the second contracts were made; and, in the second de-

fense, that—"by and in pursuance with the terms and provisions of these last mentioned contracts, and no·other, the said property was sold and the said Settle, or plaintiff, or someone represented by them, became the purchasers of said property and paid therefor the full sum mentioned in said contracts of June 11th, 1909; that all the terms and conditions of said contracts of June 11th, 1909, were fully carried out and performed by this defendant and the other parties thereto." Plaintiff, in his replication, admits the agent signed the second contracts, and, in his testimony, admits that the sale was completed June 14th, in pursuance of the understanding or the result of the agent's trip to see the co-owners at the time the two contracts were made. The agent testified that— "I had no instructions from Mr. Fleming to sign any second contract with these men, *any further than to get the property, and that was the only way I saw for it.*"

Reversed, and the lower court directed to dismiss the case, with costs.

HURLBUT, J., having been of counsel, does not participate.