**SINGER HOUSING COMPANY, a Delaware Corporation, Plaintiff,**

v.

**SEVEN LAKES VENTURE, a joint venture, Mizel Development Corporation, a Colorado Corporation, Gold Crown, Inc., a Colorado Corporation, as trustee and in its own right, Robert Hayutin, Alton Associates, a General Partnership, Frederick L. Ginsberg, and Steven P. Levine, Defendants.**

Civ. A. No. 76–K–1188.

United States District Court, D. Colorado.

March 5, 1979.

Andrea I. Williams, Davis, Graham & Stubbs, Denver, Colo., for plaintiff.

Pamela A. Gordon, Denver, Colo., for Seven Lakes Venture & Frederick L. Ginsberg.

Alan A. Armour, Goldstein, Armour & Lonnquist, P. C., Denver, Colo., for Mizel Development.

Jeffrey L. Smith, Cohen, Brame, Smith & Krendl, Denver, Colo., for Robert Hayutin.

Edward B. Towey, Towey & Zak, Denver, Colo., for Gold Crown, Inc.

Jo Ann Weinstein, Tallmadge, Tallmadge, Wallace & Hahn, Denver, Colo., for Steven P. Levine.

**372**

## ORDER

KANE, District Judge.

This matter is before the court on plaintiff's motion for partial summary judgment in an action seeking damages and declaratory relief for the alleged breach of two written contracts. A hearing on the matter was held May 31, 1978 and the matter is ready for disposition.

### FACTS

On February 22, 1973 Alton Associates, Gold Crown, Inc., Mizel Development Corporation and Fred C. Sproul, Inc., entered into a joint venture agreement for the purpose of acquiring "real estate . . . located in the County of Arapahoe, State of Colorado, and to develop and improve, or cause the development and improvement of the same as a total subdivision. . . ." The joint venture was denominated "Seven Lakes Venture."

The Venture subsequently acquired the "Seven Lakes Venture Property" and planned to develop it as a subdivision for over 2,000 single-family homesites. The objective was to develop the property and then sell the sites to builders for the actual construction of residences.

Pursuant to an "Agreement for Sale of Real Property," dated September 5, 1974 [hereinafter referred to as the "Sale Agreement"], defendant Seven Lakes Venture sold Singer Housing Company, a builder of single-family residences, 291 residential building lots in Seven Lakes Subdivision, Filing No. 1 [hereinafter referred to as the "Sale Property"], and 20 residential building lots in Seven Lakes Subdivision, Filing No. 4 [hereinafter referred to as the "Model Property"], both in the City of Aurora, County of Arapahoe, State of Colorado. Under the terms of the Sale Agreement, the Venture and the other defendants (as venturers in Seven Lakes Venture, as partners of those venturers, and/or as guarantors of Seven Lakes Venture's obligations under the Sale Agreement) were obligated to complete all of the development work on the Sale Property and were obligated to complete a substantial part of the development work on the Model Property. At the time this agreement was made the development work to be performed by the Venture had not been completed.

In order to protect Singer Housing in the event such development was not timely completed, the following provision was included in the Sale Agreement between the parties:

> In the event Seller shall fail to timely complete any work or other performance required hereunder, Buyer may, but shall not be required to, * complete the work or other performance and reimburse itself from all amounts withheld from the purchase price or by drawing against the letters of credit, whether or not the sums or letter of credit from which such reimbursement is drawn were withheld or provided for such item or any other item of work or performance, for all its costs of doing so, including reasonable overhead and profit costs on the work done, and costs of all work done in connection with completing such work and performance, and for any damage Buyer shall have suffered as a result of Seller's failure to complete such work or other performance. *Sale Agreement,* ¶ 4. [* in addition to all other remedies Buyer may have, whether hereunder or at law or in equity]

Due to limited capital, the Venture applied to Percy Wilson Mortgage and Finance Corporation for financing the development of the Venture property. Defendants contend that Percy Wilson actually issued several construction loans to the Venture and, in addition, issued a letter of credit for $367,106 in the event that the Venture failed timely to complete the development work.

Defendant Seven Lakes Venture claims that before development was completed, Percy Wilson wrongfully dishonored its construction loan which resulted in some development work not being "timely completed." Plaintiff alleges that Singer "completed the work," as permitted by the Sale Agreement, and proceeded to "draw against the letter

of credit." However, Percy Wilson dishonored the draw. Pursuant to C.R.S. 4–5–115 (1973), Singer Housing filed suit against Percy Wilson Mortgage and Finance Corporation on December 13, 1976 in the District Court in and for the City and County of Denver, State of Colorado, Civil Action No. C–68556.

A final judgment was entered by District Judge Robert P. Fullerton on May 24, 1978 wherein plaintiff was granted judgment against defendant Percy Wilson in the full amount available under the letter of credit of $367,106 plus interest in the amount of $75,231.60 to and including May 24, 1978, plus $80.46 interest per day thereafter to and including the date of judgment. According to this court's records, no satisfaction of the judgment has been obtained to date.

Plaintiff Singer Housing claims that it has performed certain of the development work which defendants failed to perform, including installation of the water lateral stubs, overlot grading, and erection of fences or escrowing money in lieu thereof, on the Sale Property, and installation of the water and sewer systems and street paving and related earthwork on the Model Property. Singer seeks to recover its damages, consisting of the cost of completing the development work in the approximate amount of $60,000, plus reasonable overhead and profit, lost sales and, in addition, as a result of defects in certain work completed by defendants, Singer seeks damages resulting from the flooding of the storm drainage system and asphalt failure of streets in the Sale Property.

Plaintiff further alleges that some of the development and maintenance work that defendants were obligated to perform has still not been completed, including, but not limited to: installation of electric and gas transmission lines and street lights; dedication to public use, landscaping, and fencing of greenbelt areas; establishment of survey range boxes; and maintenance of streets until accepted by the City of Aurora. Singer seeks declaratory judgment that, by failing to complete this work, defendants have

breached the Sale Agreement and are liable to Singer for all damages it suffers as a result of their failure. Finally, Singer seeks to recover its costs and attorneys' fees incurred in this action.

Defendants argue that plaintiff's obtaining a judgment under a letter of credit issued by Percy Wilson Mortgage and Finance Corporation affects plaintiff's rights in this motion for partial summary judgment. It does not.

A letter of credit is a contract between the issuer and the beneficiary and is independent of the underlying contract, i. e., the contract between Seven Lakes Venture and Singer. *See Dovenmuehle, Inc. v. The East Bank of Colorado Springs, N.A.,* Colo.App., 563 P.2d 24 (1977); *Hyland Hills Metropolitan Park and Recreational District v. McCoy Enterprises, Inc.,* Colo.App., 554 P.2d 708 (1976). The remedies pursued here are independent of the remedies it pursued as a beneficiary in its action against Percy Wilson. Although a party may obtain only *one satisfaction,* it can obtain as many judgments against as many different parties on as many different theories as it can establish in order to obtain that satisfaction. *Frank v. Wolkswagenwerk A.G.,* 522 F.2d 321 (3rd Cir. 1975).

On July 9, 1976, in an apparent attempt to mitigate the problems raised by the wrongful dishonor by Percy Wilson and defendant Seven Lakes Venture's inability to complete its development work, the parties entered into a second contract [hereinafter referred to as the "July Agreement"]. The July Agreement provided that Seven Lakes Venture would reimburse Singer for the work performed on the Model Property by Singer which was the obligation of Seven Lakes Venture and that Seven Lakes Venture would either perform additional obligations within a specified time or make payments and do the things required under the July Agreement. Singer instituted this action seeking relief under the July Agreement in the Fourth, Fifth and Sixth Claims for Relief of its complaint.

In the Fourth Claim for Relief, Singer seeks to recover the amount of $34,000

damages plus interest and attorney's fees resulting from Seven Lakes Venture's breach of the July Agreement. In the Fifth Claim for Relief, Singer seeks declaratory judgment of its rights and Seven Lakes Venture's obligations under other provisions of the July Agreement. The Sixth Claim for Relief asserts Singer's rights against the venturers in Seven Lakes Venture, defendants Alton Associates, Mizel Development Corporation, Robert Hayutin, Gold Crown, Inc., and against the general partners of Alton Associates, defendants Frederick L. Ginsberg and Steven P. Levine, including Singer's rights against them under the July Agreement.

In addition, Singer seeks summary judgment on the counterclaim filed by defendant Seven Lakes Venture on November 22, 1977. The Venture claims that Singer was obligated to transfer certain gas taps to Seven Lakes Venture; that Singer had not transferred these gas taps; and that Seven Lakes Venture has been thereby damaged. Plaintiff's position is that this "so-called agreement" and the dispute regarding this gas tap issue were addressed and were the subject of an accord and satisfaction in the July Agreement. Singer asserts the accord and the satisfaction in support of its motion for partial summary judgment.

Seven Lakes Venture admits the execution and authenticity of the July Agreement. That agreement provides in part:

In consideration of the obligations of Seven Lakes under the Agreement for Sale of Real Property between Seven Lakes and Singer dated September 5, 1976 (the "Sale Agreement"), and in consideration of the promises and covenants made herein by the parties, *Singer and Seven Lakes do hereby promise and agree as follows:*

. . . . .

2. Within sixty days after the date hereof, Seven Lakes shall:

A. Pay Singer, or cause Singer to be paid, *$25,000 as reimbursement for development work done by Singer with respect to the Model Property.*

B. *Complete all fencing* (including the fencing of Lots 10, 11, and 12, Block 3, Seven Lakes Subdivision, Filing No. 1, and, unless the requirement for such fencing is waived as an ASP–9 requirement by VA, also including the fencing of Lots 24, 25, 26, and 27, Block 3, and of Tracts A, C, D, and E, Seven Lakes Subdivision, Filing No. 1) *required of Seven Lakes pursuant to paragraph 1J of the Sale Agreement,* other than the fencing of Tract B, Seven Lakes Subdivision, Filing No. 1; provided that *nothing contained herein shall relieve Seven Lakes of its obligation to fence Tract B* as required by the Sale Agreement. Such fencing shall be completed in accordance with all applicable requirements.

The Sale Agreement, Paragraph 1J provides:

1. Development of the Sale Property. Seller shall perform all site development work so that the lots comprising the Sale Property are fully developed single-family residential building sites, with all onsite utilities installed, all streets paved and all other improvements in the public rights-of-way installed, all fees paid for a single-family residential subdivision (other than normal individual house building permit fees for single-family residences and normal individual water and sewer tap fees for single-family residences), with all lot grading, subdivision fencing attributable to green belt areas or required on the ASP–9 from VA, and other onsite development work to be performed by Seller [Seven Lakes Venture] shall include, but not be limited to:

J. Dedication to public use of Tracts A, B, C, D, and E, Seven Lakes Filing No. 1, *installation of fencing thereon,* and sodding and other landscaping thereof; *provided,* however, that *if any of such Tracts are not required to be greenbelts pursuant to the letter from the City of Aurora dated August 14, 1974, . . .* dedications, fencing, sodding, and other landscaping of such tracts *shall be required only to the extent required by FHA or VA.*

■ Because the July Agreement was made in consideration of the promises and covenants set forth and agreed to in the September 5, 1976 "Sale Agreement," the July Agreement controls in the event of conflict between the two agreements. Seven Lakes, in this July Agreement, covenanted to pay Singer $25,000 for development work done by Singer with respect to the Model Property. In response to plaintiff's Requests to Admit, Virginia D. Anderson, Supervisor, Seven Lakes Venture, admitted that plaintiff had not been paid $25,000 under the July Agreement.

■ With regard to the fencing to be completed on the Sale Property, Seven Lakes Venture was to install fencing thereon unless relieved from that obligation pursuant to a letter from the City of Aurora, dated August 14, 1974, and, in that event, fencing would be required only to the specifications of FHA or VA. The Veterans Administration imposed fencing requirements in the Pre-Construction Analysis sent to Seven Lakes Venture on September 10, 1974, and known as the ASP–9. Ultimately, the lots adjacent to Tracts A, B and C were required to be fenced. There has been no evidence presented that relieves Seven Lakes Venture of that obligation. Under the July Agreement, the Venture was bound by the requirements set forth in paragraph 1J of the Sale Agreement. In response to plaintiff's Requests to Admit and to Interrogatories to defendants, Virginia D. Anderson admitted that the fencing has not been erected.

The July Agreement also provides that the expenses incurred by Singer in connection with installation of the water laterals in the Sale Property would be compensated by the replatting of three greenbelt tracts into buildable lots or the payment of $9,000. Paragraphs 3 and 5 of the July Agreement provide as follows:

3. Seven Lakes shall replat Tracts A, C, and E, Seven Lakes Subdivision, Filing No. 1, Arapahoe County, Colorado, together with the lots adjoining said Tracts so that said Tracts will be usable as single-family detached residential building sites. . . . Said replatting, conveyance, payment, and delivery shall be completed within four months after the date hereof, and if the same, or any part thereof, shall not have been completed within such time, Seven Lakes shall immediately pay Singer $9,000 in lieu thereof.

5. Seven Lakes' performance of its obligations pursuant to paragraph 3 above shall be in exchange for and fully discharge Singer's claim against Seven Lakes for reimbursement of costs incurred by Singer in extending water service lines to lots in the Sale Property following Seven Lakes' failure to make such installations as required by paragraph 1B of the Sale Agreement. . .

It is admitted that the replatting of the three tracts, Tracts A, C and E, in Filing No. 1 in lieu of payment for the installation of the water laterals has not been done. Furthermore, the adjacent lots have now been sold to individual homeowners so that replatting of the tracts into regularly shaped lots is no longer possible. [Ginsberg Dep. p. 32, lines 19–22; p. 14, lines 12–25.]

Accordingly, it is ordered that plaintiff's motion for summary judgment on its fourth claim for relief is granted in the amount of $34,000. Plaintiff's motion for summary judgment on its fifth claim for relief is granted. Defendant Seven Lakes Venture is liable to plaintiff for all expenses and costs and other damages it may incur as a result of defendant Seven Lakes Venture's failure to complete the required fencing.

■ Plaintiff contends that not only is Seven Lakes Venture liable for its breach of contract, but the individual venturers are also personally liable for the breach of contract alleged herein. At the time of the July Agreement, Seven Lakes Venture was composed of the following joint venturers: (1) Alton Associates, (2) Gold Crown, Inc., and (3) Robert Hayutin. Frederick L. Ginsberg and Steven P. Levine were allegedly partners in Alton Associates [a Colorado general partnership as of July 9, 1976]. Plaintiff urges that Ginsberg and Levine

are individually liable for the obligations of Alton Associates, one of those being the obligations of Seven Lakes Venture under the July Agreement.

On May 30, 1978 Steven P. Levine filed an affidavit in opposition to the motion for partial summary judgment. Defendant Levine contends that he was a general partner of Alton Associates at the time of its inception in December 1969. However, in his affidavit he attests that on or about February 6, 1976 he signed a stipulation with defendant Ginsberg terminating Alton Associates and that said stipulation was entered as an Order of the Arapahoe County District Court in Civil Action No. 34811, *Ginsberg v. Levine,* on October 19, 1977. Defendant Levine contends that pursuant to the said stipulation, Ginsberg became the sole owner of Alton's interest in Seven Lakes Venture; that affiant transferred his profit sharing percentage in Seven Lakes Venture to Ginsberg on or about February 13, 1976; that at the time of signing the July Agreement he was not a partner in Alton nor a joint venturer in Seven Lakes Venture; and that he had no knowledge of said agreement until the institution of this lawsuit. Thus, a question of fact exists as to the partnership status of defendant Levine at the time of signing the July Agreement.

██ The substantive law of partnerships is applicable to joint ventures. *Bushman Construction Company v. Conner,* 307 F.2d 888 (10th Cir. 1962); *Taylor v. Brindley,* 164 F.2d 235 (10th Cir. 1947). The act of one partner binds the partnership. C.R.S. 7–60–109(1) (1973). Once the partnership is bound, each individual partner is jointly and severally liable for all debts and obligations incurred by the partnership. C.R.S. 7–60–115(1)(b) (1973). *Kruse v. Bank of Fountain Valley,* 28 Colo.App. 364, 473 P.2d 171 (1970).

██ Accordingly, it is ordered that plaintiff's motion for summary judgment on the sixth claim for relief is granted as to all of the individual venturers except defendant Steven P. Levine.

## COUNTERCLAIM

Seven Lakes Venture has counterclaimed for damages allegedly arising out of the breach of an agreement between Seven Lakes Venture and Singer. Seven Lakes Venture alleges that there were negotiations which culminated in its transferring 204 gas taps to Singer for use on Singer's housing projects in exchange for Singer's agreement to exercise an option under the Sale Agreement to purchase additional property in Seven Lakes Subdivision, Arapahoe County, Colorado, and for Singer's return of the gas taps out of its next allotment from the Public Service Company of Colorado.

The rights and obligations of Singer and Seven Lakes Venture with respect to this issue were specifically dealt with in the July Agreement. This agreement discharged all of Singer's obligations relating to the transfer of the gas taps and provided that if Seven Lakes Venture satisfies its obligations under the July Agreement, Singer would transfer 150 gas taps to Seven Lakes Venture, as follows:

7. All of Singer's obligations under this paragraph 7 shall be conditioned on the full and timely performance and satisfaction by Seven Lakes of all its obligations set forth in paragraphs 1 and 2 hereof, and, in the event Seven Lakes shall fail to perform or satisfy any such obligation, or *in the event any such obligation shall not be performed or satisfied within the time provided therefor in paragraphs 1 and 2 hereof, Singer shall be fully relieved of all obligations under this paragraph 7.* Following Seven Lakes' full and timely satisfaction of all obligations provided in paragraph 1 and 2 hereof, Singer shall make one hundred fifty (150) gas taps (expiring in December, 1976) which Singer now owns available for transfer to Seven Lakes (or its designees) and shall, subject to the limitations provided in this paragraph, attempt to transfer said taps to Seven Lakes or its designees and cooperate with Seven Lakes in good faith in Seven Lakes' ef-

forts to effect such transfer of said taps. . . . Singer's obligation to attempt to transfer said 150 taps shall terminate on September 1, 1976, and, if any of said taps have not then been so transferred by said date, Singer may devote said taps to its own use or purposes.

Singer's obligation under this paragraph 7 are incurred in exchange for any obligation to replace gas taps transferred to Singer by Seven Lakes during 1975. *The promises made by Singer in this paragraph 7, together with the performances of any obligations of Singer arising under this paragraph 7, shall fully and completely discharge any and all obligations of Singer to transfer, return, or replace, or to arrange for the transfer, return, or replacement of, gas taps transferred to Singer by Seven Lakes during 1975, together with all rights, claims, demands, and damages arising out of any such obligations.* (Emphasis added.)

Seven Lakes Venture admits that it did not satisfy its obligations under ¶ 2 of the July Agreement, i. e., to pay Singer $25,000 as reimbursement for development work done by Singer with respect to the Model Property. The Venture further admits that it did not complete all fencing required of Seven Lakes pursuant to ¶ 1J of the Sale Agreement. Under ¶ 7 of the July Agreement, Seven Lakes Venture's claims relating to transfer of the gas taps have been discharged.

■ Where parties have entered into an agreement and a dispute arises as to the relative rights and obligations thereunder, a later substituted agreement addressing and resolving that issue acts as an *accord and satisfaction* and discharges all obligations under the initial agreement. *Anderson v. Nelson,* 110 Colo. 374, 134 P.2d 1053 (1943); *McKay v. Fleming,* 24 Colo.App. 380, 134 P. 159 (1913); 6 *Corbin on Contracts* §§ 1276–78, 1284, 1286, 1288 (1962).

■ It is evident that the July Agreement was, and was intended to be, an accord and satisfaction between the parties. Seven Lakes Venture's rights are limited to those set forth in the July Agreement.

Those rights were forfeited when it failed to perform its obligations under the July Agreement.

Accordingly, it is ordered that plaintiff's motion for summary judgment on defendant's counterclaim is granted. The counterclaim is thus dismissed.

### INTEREST

■ Plaintiff seeks interest from the date Seven Lakes Venture's obligation to pay the principal amount became fixed and liquidated, i. e., the dates fixed by the July Agreement. C.R.S. 5–12–102, *as amended,* covers liquidated claims. Plaintiff contends that it is entitled to recover interest on the $25,000 from September 7, 1976 since Seven Lakes agreed to pay Singer the monies as reimbursement for development work done by Singer with respect to the Model Property within 60 days after the date of the July Agreement. [July Agreement, ¶ 2A]. Seven Lakes also agreed to replat Tracts A, C and E, Seven Lakes Subdivision, Filing No. 1, Arapahoe County, Colorado, within four months after the date of the July Agreement, i. e., on or before November 9, 1976, or immediately pay Singer $9,000. [July Agreement ¶ 3].

Accordingly, it is ordered that plaintiff's motion to recover interest on the $25,000 from September 7, 1976 and interest on the $9,000 from November 9, 1976 is granted. *See The Intermountain Rural Electric Association v. Colorado Central Power Co.,* 322 F.2d 516 (10th Cir. 1963); *York Plumbing & Heating Co. v. Groussman Investment Company,* 166 Colo. 382, 443 P.2d 986 (1968).

### ATTORNEY'S FEES

■ Plaintiff also requests that it be awarded attorney's fees since the July Agreement ¶ 11 provided for the same. When provided for by contract, a party may recover its attorney's fees incurred in enforcing its rights under the contract. *See Publix Cab Co. v. Colorado National Bank,* 139 Colo. 205, 388 P.2d 702 (1959); *Fenner & Shea Construction Co. v. Wadkins,* 32 Colo.App. 364, 511 P.2d 924 (1973).

Accordingly, it is ordered that plaintiff's motion for an award of attorney's fees is granted. Plaintiff's counsel are directed to file an itemized statement on or before fifteen (15) days from the date hereof, with a copy thereof to defendant, setting forth the time expended and the amount claimed as a reasonable attorney's fee therefor. Within five (5) days from the receipt of this statement, defendants shall file any objections they may have. If such objections are filed the matter will be set for hearing. If none are filed, the court will determine, in camera, the fee to be awarded.

## MOTION TO DISMISS

 Defendant Robert Hayutin filed a motion to dismiss pursuant to Rule 17(a), F.R.Civ.P. on February 23, 1978. Defendant Hayutin urges that plaintiff is not the real party in interest in this action and that plaintiff's action should accordingly be dismissed. As grounds therefor, defendant contends that the present action was started in federal court based upon diversity when it was known all along that plaintiff would immediately thereafter transfer its interest to a Colorado resident, thus defeating diversity. Defendant further submits that plaintiff acted with the intent of splitting causes of action by commencing a separate action against the lender, Percy Wilson Mortgage. The latter issue has already been discussed.

Rights under the Sale Agreement and the July Agreement, including claims pending in this litigation, were assigned to Melody Homes, a Colorado joint venture, on January 3, 1977, during the pendency of this litigation. Defendant urges that Melody Homes is the real party in interest and should be given an opportunity to join in this action, and that upon their joinder diversity jurisdiction will be destroyed and this court will consequently be divested of subject matter jurisdiction.

At the time this suit was commenced Singer held all the right, title and interest to its claims under both agreements. Since the claims asserted by Singer under the Sale Agreement and the July Agreement are not personal actions, they were properly assignable.

 Federal diversity jurisdiction exists if determined at the time suit is commenced. *Smith v. Sperling,* 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957); *Mullen v. Torrance,* 9 Wheat 537, 22 U.S. 537, 6 L.Ed. 154 (1824). Subsequent events do not affect this court's jurisdiction, including the substitution of parties under Rule 25(c), F.R.Civ.P. *Id.* Furthermore, Rule 25(c) provides that the action may continue by the original party plaintiff unless a substitution or joinder is ordered, upon motion, by the court. No motion has been made herein by any defendant. Singer Housing Company is a proper party plaintiff.

Accordingly, it is ordered that defendant Hayutin's motion to dismiss is denied.

## RULE 54(b) CERTIFICATION

 Since Singer has moved for summary judgment on only a portion of the complaint and on the counterclaim, it has moved for an order entering a final judgment on those claims, thus entitling Singer to collect its debt from defendants through execution under Rule 54(b) of the F.R. Civ.P. Rule 54(b) provides:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Whether to grant a Rule 54(b) certification is within the sound discretion of the court. *See United Bank of Pueblo v. Hartford Accident & Indemnity Co.,* 529 F.2d 490, 492 (10th Cir. 1976). Five factors are generally considered:

1. The relationship between the adjudicated and unadjudicated claims;
2. the possibility that the need for review might or might not be mooted

by future developments in the district court;

3. the possibility that the reviewing court might be obliged to consider the same issue a second time;

4. the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final;

5. miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, triviality of competing claims, expense, and the like.

*Allis-Chalmers Corp. v. Philadelphia Electric Co.,* 521 F.2d 360, 364 (3rd Cir. 1975) enumerated these factors for consideration but did not treat them as completely inclusive.

 Since the claims and defense on which summary judgment is sought are based on the July Agreement and are separate from the claims under the Sale Agreement; the claims subject to the motion for partial summary judgment concern only the contractual provisions of the July Agreement and performance thereunder; the claims which remain are subject to no set-off; and certification would streamline the issues to be considered for trial. Allowing plaintiff to recover against defendants satisfies the equitable consideration identified as the fifth criterion in the *Allis-Chalmers* test.

This is a case appropriate for Rule 54(b) certification. Accordingly, plaintiff's motion for certification is granted.

In summary, IT IS ORDERED that:

1. Plaintiff's motion for partial summary judgment on its fourth, fifth and sixth claims for relief is granted. Plaintiff shall have judgment against defendants Seven Lakes Venture, Gold Crown, Inc., Robert Hayutin, Alton Associates and Frederick L. Ginsberg in the amount of $34,000 plus interest on $25,000 from September 7, 1976 and interest on $9,000 from November 9, 1976 at the rate of eight per cent (8%) per annum.

2. Plaintiff's motion for certification pursuant to Rule 54(b) F.R.Civ.P. is granted.

3. Plaintiff's motion for summary judgment on defendant's counterclaim is granted and the counterclaim is thus dismissed.

4. Plaintiff's motion for an award of attorney's fees is granted. Plaintiff's counsel are directed to file an itemized statement on or before fifteen (15) days from the date hereof, with a copy thereof to defendants, setting forth the time expended and the amount claimed as reasonable attorney's fees therefor. Within five (5) days of receipt of this statement, defendants shall file any objections they may have. If any such objections are filed, the matter will be set for hearing. If none, the court will determine, in camera, the fee to be awarded.

5. Defendant Hayutin's motion to dismiss is denied.

6. A pre-trial conference will be held in this case on April 4, 1979 at 8:00 A.M. in Chambers. Counsel are directed to follow the instructions regarding pre-trial conferences attached hereto and incorporated herein.